Because it's for appellant now, yes. Good morning. Good morning, Your Honors, and may it please the Court, my name is Jessica Bagdanov. I represent Michael Kasolas, the appellant and liquidating trustee for the estate of Robert Brower Sr. I'd like to reserve maybe three minutes, if I can get there. Okay, thank you. You can proceed. Thank you, Your Honors. By this appeal, the trustee asks this panel to reverse a partial judgment of the bankruptcy court, which dismissed the trustee's second amended complaint without leave to amend. This is a certified partial judgment under Rule 54B, and this panel reviews the bankruptcy court's decision de novo on all matters. At a high level, this case is about a Chapter 11 debtor in possession. He was the sole shareholder of a corporation organized in California, I'll call Coastal. That company, as pled in the complaint, was post-petition liquidated. It sold substantially all of its assets, which was a wine estate in Northern California. It paid all of its then-existing creditors. It took all of the steps to liquidation except distributing remaining proceeds. Well, let me ask you this just hypothetically. If we find that Section 549 claims are barred by the statute of limitations, what's left? Well. You lose them, right? I don't believe so. Well, there's — this case is — Because you're — you want to — you want to pierce the — you want to pierce the veil or whatever. You want to make them one and the same, and so you want us to look at the cases on that. But if you blew the statute of limitations, that doesn't really matter, right? I think it does matter. There's various ways that we have tried to plead this case, three different times, to plead a right that the estate can assert. And this — Right. But you haven't claimed that this was a fraudulent — it's not here as a fraudulent transfer, correct? The original complaint and First Amendment complaint did bring Section 349. But what we have here, what do we have here? We don't have a fraudulent transfer here, right? On the Second Amendment complaint, no, Your Honor. Okay. So that's — we're reviewing — that's what we're reviewing. So that being said, if you — and the statute of limitations, I know that you're asking to toll and all of that, but if this — if you did have a fraud claim, it would be a different situation when the statute starts to run, right? Sure. But there's also conversion that's been claimed in this version of the complaint. There is 542 turnover. There is the 549 transfers, as you mentioned. And then, of course, the claims against the attorneys, but — Well, if we say you're barred by the statute of limitations, hypothetically, you wouldn't have anything left, right? I think that's probably true. Okay. So now go back on what your argument is on how we get to this and how you aren't barred by the statute. Yes, Your Honor. How we get here is a few different ways. Number one, I think the Bankruptcy Court made a few critical errors of law. Number one, in its application of the Rule 12b6 standard, because, again, we're here at the pleading stage. This is — many of the cases cited in our briefs are post-summary judgment or even post-trial matters. This is the pleading stage where a trustee is seeking the balance of proceeds left in a bank account to have that debtor turn it over to his bankruptcy estate. And interestingly, in bankruptcy, this is a kind of a strange creature, the Chapter 11 debtor, because he wears three hats, seemingly all at the same time. He wears his hat as an individual person. He wears his hat as Coastal's sole shareholder and only person in charge. But he also has his debtor-in-possession hat. Under the Bankruptcy Code, that's the same thing as a trustee. It cannot be removed. He is the fiduciary for the bankruptcy estate at all times. But we have to look to California law to see — to recognize these property interests. And as the — as the BAP mentioned below, there are these corporate forms. And when Coastal sold its assets and did not distribute, that would have given rise to a claim for those assets. But why does that amount to something that is a property of the estate itself? That's absolutely right, Your Honor. And I'd ask the BAP, what claim? The claim, Your Honor, is Section 542 — For distribution, for example. — turnover of an estate asset, because it belongs to no one else but the estate. It cannot be the case in this circuit that a debtor can set up a corporation, keep it open, it does nothing, there's no creditors, and it has $6 million in the bank account, and it can hide that money from the bankruptcy court and the debtor's creditors for perpetuity. That cannot be the law. Well, can you cite a Ninth Circuit decision or a BAP decision that holds that an alter ego analysis can be used to find corporate assets or property of the debtor, and therefore property of the estate? A Ninth Circuit-level decision, Your Honor? Or a BAP? Yes. In racing is a BAP decision, Your Honor. And it held in the context of Section 727, which is denial of a debtor's discharge. The code provides that a debtor is not entitled to a discharge where it can be shown that, among other things, that he concealed or transferred away property of the estate with — I think there's a mens rea element to certain of the subsections. And does it involve a corporation? Yes. The debtor was an individual. Stashed money in his corporation. And he was denied a discharge for it. Why? But the property didn't come back in the estate, did it? No. But the element — That's what you're arguing, is the property needs to go back in the estate, saying it was a discharge case, and they denied the discharge. Am I understanding? Yeah. That's correct. And the element that's most — So why is that relevant here in the context of getting the property? Because the code language is identical. It's a twin element. 727 requires an element. You can either be denied a discharge for something you do prepetition, and the code calls it property of the debtor. You can be denied a discharge for something you do postpetition. And it's called property of the estate. It's property of the estate. That is the twin language that exists in 549 and 727. That is an alter ego case primarily. I think the best case is actually a Ninth Circuit case that's less about alter ego specifically and more about control, Your Honor. D.Z. Bank v. Meyer is a Ninth Circuit decision where the issue was, did the debtor have sufficient control over this non-debtor corporation that that corporate money would be liable on a judgment of the debtor? And the answer is absolutely yes. Would this money have been liable for debts of the debtor? Absolutely. Who else would it belong to but the estate? This is—the importance of this case, Your Honor, and for the implications of what it has on bankruptcy in this circuit is—honestly, it's frightening. This is a license to steal that debtors can come, set up corporations, and hide money. That is—now, D.Z. Bank was a fraudulent transfer case, and the BAP considered it but disregarded it because it was under Washington Uniform Fraudulent Transfer Act. However, the California— So I guess I go back to my—so are we to look at California cases in resolving this issue about alter ego piercing or Ninth Circuit and BAP cases that involve other state law? Well, the—I think the answer to your question is twofold. At the federal level, we're looking at the bankruptcy code that defines property rights that looks to state law. But Whiting Pools, for example, the seminal case on property, talks about the broad scope of property rights, and this is where I think there's another legal error by the bankruptcy court in too narrowly constricting that idea because Whiting Pools and case after case talk about how the bankruptcy code envisions a scenario where you don't have to have property in your bankruptcy estate. And again, this is a Chapter 11 debtor who's a fiduciary for his creditors at all times, and Whiting Pools says nothing requires that the debtor has a possessory interest, yet the bankruptcy court and the BAP appear to require that. That's incorrect. Now, to the second layer, you look to California law on the breadth of contractual rights or how alter ego works, and in California, there is piercing the corporate veil, and as Postal Instant Press, the case talks about, there is reverse piercing. And I think of reverse piercing as somewhat of a misnomer in this case because it's really asking the question, and the court in Postal talks about this, would the assets that are legally titled in the name of the corporation be liable for the individual's debts? Could, in this instance, MUFG Bank have, outside of bankruptcy in a hypothetical situation, attached and gotten that money? Absolutely. Well, okay, so I think that would, the argument that they're making is that the distribution of the net proceeds here were used to pay out Coastal's contractual obligations. Your beef with that is that they somehow got a preferential payout, not that they couldn't have gotten a payout if it were part of the estate. My beef with that, Your Honor, is that it's contrary to what is pledged in the trustee's complaint. The trustee's complaint alleges that all then-existing creditors of Coastal were paid. These appellees and the other defendants received and then some. They received money because they were not existing creditors. The debtor, instead of putting this money in to pay his creditors, paid his friends, paid his family, bought a house, loaned his son some money. And unfortunately, he's deceased, and we don't have him here today. But in this instance, these are not then-existing creditors. This liquidation was all but done, and not to mention the fact that the debtor lied to the bankruptcy court under penalty of perjury at least four times. But it sounds like you're re-arguing fraudulent conveyance theories that were already dismissed. I mean, that would seem to make sense if you had a traction with the fraudulent conveyance side of this. But we're here on these more limited issues about alter ego piercing and whether this was property of the estate or not. Yes. And I think something that may — I think this case is easy, myself included, to lose some of the big picture in the details. But the details are important. And in this case, we also pled conversion. Your obvious view is that the person that is deceased scammed the court and hid assets and did whatever as far as that. But I think what Judge Sanchez is saying, while all that may be true on some level, the courts never have exactly bought your argument on this. And now we're here on a more limited review, and we have to decide it based on that. You lost on those issues, basically. Yes. And it's important — I think it's critical to note that these appellees are not innocent. The complaint alleges that the debtor did not act alone. This was not happenstance. This was orchestrated. They knew what was going on. Even the lawyers were involved, Your Honors. Okay. So how does that figure into our analysis here, that you don't think that they were innocent and that they were all in cahoots? How does that figure into the analysis that we have to do here? It figures in because — Other than that, obviously, it's sort of like someone could be really seriously injured in an accident, and there's no doubt about that, but then the liability still has to be proven. And so — Yes, under — And you're in the having to prove the liability part of it. Yes, Your Honor. Under any theory, alter ego, Section 549, avoidance and recovery of transfers, or conversion, the trustee may recover from third parties, either as initial transferees or even subsequent transferees. Well, you're clawing back here, right? Excuse me, Your Honor? You're clawing back because the money's gone. You're wanting to claw it back. Yes. The conversion claim is not a clawback claim under Section 500 of the bankruptcy code, but, yes, that is the gravamen of the complaint. Well, let's assume that the money hadn't been transferred. And this is a liquidating 11, correct? Yes. It's not a plan of reorganization where they're trying to keep in business. They're liquidating as they would under Chapter 7, right? The creditor in this case proposed the plan at MUFG Bank, and so I believe that you are correct that it was a plan of liquidation, and this was the main asset that everybody was looking to, and then it was gone. All right. Let's, for simplicity, let's assume it's Chapter 7. Yes. The trustee under Chapter 7 would be entitled to the stock and nothing else, correct? I don't agree under these facts as pled. Why don't you agree? I mean, because you can liquidate the stock, but you don't necessarily liquidate the assets of the corporation. As pled, Your Honor, in this case, all of the assets were liquidated already, and all there was. I understand that. I'm just saying, in the ordinary course, if the asset is a stock in a corporation, you just liquidate the stock. You don't liquidate the corporation. There may be a practical disconnect because, as a Chapter 7 trustee, he would be entitled to the stock, he would walk into the bank and take the money from the bank account and put it into his trustee account, Your Honor. Not if the corporation is not the debtor. Not if the corporation has... Is not the debtor. I mean, if it's just the debtor who owns stock, you liquidate the stock, you don't liquidate the corporation. The debtor owns stock in General Motors. You don't liquidate General Motors. That's absolutely right, and that's a difference. Well, I understand. I'm just saying. Because this wasn't an operating company. It was a holding company that only had a bank account at this point as pled. All creditors were paid. All then-existing creditors were paid. I'm over my time. I don't want to... I've taken you over your time, so go ahead. Okay. Well, unless we have additional questions right now, I'll give you two minutes for a rebuttal. I appreciate that, Your Honor. Thank you. Thank you, Your Honors. Good morning, Your Honors. May it please the Court. Ryan O'Day of Shulman Bastion, Friedman & Bowie, on behalf of appellees Aurora Capital, Richard Babcock, and Anthony Nobles. In preparing for the oral argument today, I looked at just a mountain of papers, a stack of documents, and tried to figure out how we got here, how we got to this point. And the best analogy I can make is we started off with just a litany of moving targets, moving procedural or statutory targets in a procedural hallway. And at each turn, from the first complaint to the motion to dismiss that was granted to the first amended complaint and then the second motion to dismiss that was granted, what we had that first iteration was not moving of targets, but painting them perhaps a different color. After we went over the threshold of the first amended complaint, that is when targets fell permanently and the procedural hallway narrowed further. Going then to the second amended complaint, what we had was the claim under 549 for avoidance of post-petition transfer. We had rescission, and we had conversion. Those were the three main claims against all of the appellees. After the second amended complaint and the motion to dismiss that complaint was granted, we get in front of the bankruptcy appellate panel. In front of the bankruptcy appellate panel, the only things on review is the propriety of the ruling under 549, as well as the ruling on rescission. Further narrowing that hallway, we're in front of this Court today. We have now just the 549 issue, and we have the conversion claim not raised in front of the bankruptcy appellate panel, but raised in front of the bankruptcy Court. So with those two targets that we have to address — So if the statute of limitations is run, is all this gone? Absolutely, Your Honor. Okay. But it — you know, listening to your friend on the other side, that obviously the view is that, you know, something's rotten in the state of Denmark here, or that there's been, you know, trying to hide assets, and that the debtor just paid off his friends and gave them — kind of just handled it that way. And so why do we just have to put that aside and not worry about it? The purported malfeasance, Your Honor? Is that the question? Well, it seems like that certainly there's allegations that there was fraud, but it's not here on fraud. So what are we — Correct, Your Honor. It's all right. I didn't mean to cut you off. Well, it just doesn't — you know, what really happened here? It's the property — the winery got sold, and then the debtor just paid off the people that he wanted to pay off outside the bankruptcy estate, right? What happened here in the confines of a Rule 12 analysis is what is alleged. And we've heard many times from opposing counsel, as alleged in the complaint. With a glaring problem, that issue is, as alleged in the complaint, cannot survive Rule 12 as a matter of law. Going back to Your Honor's first question of purported malfeasance or allegations of fraud and how does it bear upon the issues before Your Honors today, it doesn't. A 549 analysis is in a vacuum, very clinical. All of the color commentary falls by the wayside. We have, was there a post-petition transfer of estate property not authorized? It is that middle element, and I'll call it the gating issue of this entire point, that the trustee cannot survive. Going to Judge Sanchez's point about the applicability of State law, yes. So we have the Bankruptcy Code under 541, and I know Your Honors have heard a lot of discussion today about property of the estate. Property of the estate is exceedingly broad, admitted. However, the breadth of the concept of 541 is to be analyzed in the context of applicable State law. In this instance, the case of Miller. Miller is a 91-year-old case, good law, and has been applied across the board for the understanding that corporate assets are not owned by a shareholder. There are numerous steps or a selection of a couple steps that can be utilized to make corporate assets the assets of a shareholder. You have— Well, he's the only shareholder though, right? That is correct. The debtor's the only shareholder here. So in the cases that pierce the veil, that seems to be if you're trying to hide something or you're, you know, that it's, you know, what— he's the only shareholder. It's really just his—it's his, and he wants to give it to his friends first or some contractual obligations that he has that might not be in the same order that the—that would be done by the bankruptcy court. Correct. Trustee uses the concept of alter ego as a means or an attempt to satisfy the property of the estate component under Miller. However, it falls flat on its face. As noted by the Bankruptcy Appellate Panel, the Supreme Court case of Dole clearly states that the corporate assets are not owned by a subsidiary or shareholder, even if it is wholly owned by that subsidiary or shareholder, meaning what we have before us today is no different than that very issue. If it had been a fraudulent transfer or something, that would be different here? No, it would not, because fraudulent transfer still needs the hook of estate property. But let me dig in. It's not briefed in front of Your Honors because it wasn't raised as an issue on appeal. But to dig into why the fraudulent transfer actions were dismissed with prejudice after that first narrowing of the procedural hallway, the issue is twofold. One, applicable law is clear that a trustee only has authority to avoid post-petition transfers pursuant to 11 U.S.C. 549. Making 544 bringing in 3439 at sequence under the California law or alternatively 548 of the Bankruptcy Code is inapplicable to post-petition transfers. Third reason it was dismissed with prejudice after the First Amendment complaint is these would be derivative in nature. Realizing again that it is the shareholder standing in the shoes of a shareholder that is suing to bring back money into a corporation. This is not a unique harm to that shareholder. It is purportedly a systemic harm to the corporation itself. For those reasons, the Court denied and did not give leave to amend on the fraudulent transfer claim. So I'm — I will submit to Your Honors, all of these questions, while nice and interesting, are addressing things that are categorically irrelevant to a 549 claim. Again, a — Contractual obligations. Can you explain what contracts were paid out? Absolutely, Your Honor. My clients had pre-petition contracts to serve as brokers or sale advisors on the sale of the winery itself. They were executed in the name of the corporation before Mr. Brower even filed bankruptcy. Going forward in time, when the wine estate was sold, the primary payment to my clients was made through escrow on the closing of the sale pursuant to the contract that was So we have the sale of the winery in April of 2015. That day, when it closed, the largest amount of the payment was paid to my client, an existing creditor with a contract. Secondarily, in December of 2015, the second transfer to Aurora was made, again based upon a pre-petition contract executed by the corporation. So to me, the idea that — well, the complaint alleges that all creditors were paid or if you were to ignore the fact that, of course, my clients needed to be paid because they were known existing creditors of the corporate entity. It is not for the trustee — and again, it's — I'll back up a little bit. It sort of turns on its head this whole order of operation here. If the trustee doesn't have rights to the proceeds of the corporation until all debts have been paid or provided for under CalCorp Code 2004 and Miller and its progeny, how can the trustee, when he finally gets these rights, look back in time to events that occurred before he had the right to pursue any of these? That is exactly what we have today. Well, I think the argument on the other side is that in this unique circumstance, the debtor in possession then liquidates and waits the two years and the statutes run. And then the trustee is forced into the position of trying to get back those assets that the debtor in possession has liquidated and distributed. I mean, that's — there's a fair tolling argument on that. From a statute of limitations point, Your Honor, perhaps that is a basis or a grounds to toll the applicable statute of limitation, which is two years under 549D. However, the statute of limitation issue, while I believe it is a sufficient basis to summarily uphold the lower court's rulings, is not the only issue here today. Again, assuming for the sake of argument, you know, statute of limitation has some equitable tolling component to it. That is where the rest of this argument flows from. Right. I understand that. But if, in fact, it had been, say, a Chapter 7, the trustee — liquidating Chapter 7, the trustee would have perhaps liquidated the corporation as part of the assets of the estate and received the money in the estate. So I think the argument on the other side is this is basically a shell game to try to get some preferential transfers that would not be otherwise authorized in bankruptcy theory. Perhaps the result may have been different in a Chapter 11, Your Honor. But again, it would be speculative at best to say what could have happened, what would have happened, what should have happened. Again, we do have — and I think it bears directly upon Your Honor's point on the statute of limitation — the idea that almost seven years after the subject transfers to my client is when the suit was brought. We have a two-year statute of limitation. We have a three-year statute of limitation under applicable State law for conversion. So by any stretch of the temporal imagination, all of these claims are timely. But to me, that cuts against you, perhaps, because if the sale of the property was in April of 2015 and the trustee wasn't authorized to bring claims until September of 2020, you know, so almost five years, if the statute of limitations isn't told, the trustee could not have been able to bring any claims at that point, could they? I mean, it would have been an empty gesture to have appointed the trustee at that point. Well, the issue, I think, is a bit more nuanced. As I see it, we have the plan language that says — and I'll paraphrase — essentially, all claims for relief or cause of action shall survive the confirmation order and the effective date to inure to the benefit of the liquidating trustee. It's a pretty close quote, I'm sure. If you look at that as the predicate for tolling, what is missing in the entirety of the plan are the words toll, told, or tolling. And again, we have applicable California law that says that if there's an enforceable — because, again, a tolling agreement is a contract, so you have a contract to be interpreted, there has to be a sense of privity. Number one, my clients were not plan proponents. There was no ability to oppose that plan of reorganization. For all intents and purposes, we are an absolute third party to a document. The debtor, the court, and the bank all agreed or fought and ultimately got agreed to be approved. So we are holding third parties without notice who were not signatories to this contract to the terms of a contract under this large umbrella of tolling without ever using the word tolling a single time. I mean, but tolling often has consequences toward third parties that are not involved in the — in the proceedings themselves. That's not — that's not a new concept. I guess my — going back to my earlier question, if the statute of limitations isn't told, is there a single claim that the trustee could have brought that wouldn't already have lapsed in the almost intervening five years? The answer is no. But again, having the keys to your own jail cell, Your Honor, someone could have gone into court and said, we have a statute of limitation looming. We need to amend the plan. We need to accelerate our authority to bring claims. There are things that could have been done that were not done. So at the end of the day, there might be great claims that the trustee has against Coastal. There might be great claims that someone has against whoever missed the statute of limitation. But it's not my client's fault. My clients, again, are — are creditors, non-debtors of a corporation that is a non-debtor. And we're being roped into all of these procedural issues in bankruptcy and a tolling, if you will, of a statute of limitation that we didn't participate in. I am well out of time. MS. GOTTLIEB We took you out of time. So that'll conclude. Unless my colleagues have any questions, then we'll hear the five minutes from Mr. Goss. MR. GOSS Thank you very much. I appreciate Your Honor's time.  GOTTLIEB Thank you.  GOSS Good morning. MS. GOTTLIEB Good morning. MR. GOSS Good morning, Your Honor. As you may please the Court, my name is Arthur Goss from Coffman-Dolowich on behalf of Appellee Oldfield-Creeley. And I think — I just want to touch on a few points that are still sort of outstanding, is, you know, the appellant is essentially claiming an equitable interest in the equitable value of, you know, prospective value of shares of a corporation. And it's inappropriate to grant contemplated relief because, first of all, if — you know, we've talked in our briefing about why the citations applied by the appellant are inapplicable. Sing, for example, is a 727A action. DZ, that is — you know, this is — that case evaluated State law fraudulent transfer act claims. And while the Washington and California statutory language is the same, it still is inapplicable because, as we've noted in our briefing, Miller governs the consideration of property interests. And specifically, when the property interest at issue is shares in a corporation, we have — what we have is differentiation between the shareholder, the share value, and the assets of the corporation. That is a well-established principle. And doing it the way that the appellate — the appellants would ask us to do, they can direct us to Kearsey, and they can say, well, Kearsey contemplates a scenario where reverse piercing is permitted in the scenario described here with respect to a corporation because of, you know, some sort of bad intent on behalf of the corporate actors, as demonstrated by sole control or sole ownership in the issues that they point to elsewhere. And we can infer bad intent from that. What we're asking the court to do is not do that. And the reason that the court should not do that is that it would invalidate, for example, 11 U.S.C. 549, the bankruptcy fraudulent transfer statute. It would also invalidate California statutory law on the value of corporate shares. That would be California Corporations Code 2004, which addresses distribution of corporate assets upon a lawful liquidation, which is to be distinguished from a contractual liquidation described as the liquidation event in the pleadings. It also bears on California Corporations Code Section 500. Well, the BAP has applied reverse veil piercing in some circumstances, correct? It has. It has in some circumstances. So why isn't it here? It isn't here because, you know, looking back at the full specter of the instant action is that there was a fraudulent transfer. We did attempt to characterize this as a fraudulent transfer. It was not a fraudulent transfer. And, you know, if we were to apply all the bad intent in the world to these actions, the recourse for the trustee would be the fraudulent transfer section of the bankruptcy code, not the California Fraudulent Transfer Act and certainly not the Washington Fraudulent Transfer Act as applied by a court. Moving on, addressing the conversion issue. Conversion as a theory of recovery here. Do you have a case that says that the existence of the fraudulent transfer section under the bankruptcy code completely supplants state law? I don't think that's the case. But that's your argument, isn't it? That is my argument. And I think that just given the parties involved, that this is an avoidance action based on an equitable notion in property. The equitable notion in property derives from the idea that the net proceeds of a sale were misdistributed and leaving the shares of the corporation valueless. The idea that there could be a conversion theory here or the idea that there could be a conversion theory here, same with the idea of an equitable dividend, which is expressed in the pleadings, both contemplate a fixed non-zero amount. The problem is that when you're dealing with corporate shares, the liquidation, specifically during the course of a liquidation, it contemplates both the finality being a non-zero sum and a zero or less than zero sum, which is to say that the idea of an equitable interest based on a vested notion in the value of the shares runs counter to section 2400 and California California notions of the distinction between shareholder ownership of shares and shareholder ownership of assets. That's the balance of my time. Thank you. All right. I gave you two minutes for rebuttal. Yes, you did. And I greatly appreciate that, Your Honor. Thank you. To briefly touch on something I misspoke on, is you asked me, Judge Callahan, is are we if we rule that the statute of limitations has passed, the one claim remaining, Your Honor, would be turnover. Section 542 does not have the same statute of limitations issues as 549 or other transfer claims. That said, in our briefing, we've argued three different ways that this is not barred by the statute of limitations. And the bankruptcy judge interpreted the plan that she confirmed correctly, that there was tolling despite the absence of the word tolling, and that potential adversary defendants in the future are not entitled to notice. That's correct. With respect to my friend's arguments on conversion, that his clients were paid through escrow and therefore had contracts, this is a 12b6 motion. We've alleged that they were not legitimate creditors. Prove it. If they were legitimate creditors, prove it. Show me some discovery, because as pled, they're not. On the issue of this distinction between fraudulent transfer and post-petition transfers, if it's a pre-petition fraudulent transfer, property of the estate is certainly equal if not broader post-petition. The law here, Your Honors, mandates a remedy. Could a trustee do this? A Chapter 11 trustee? Absolutely not, because we know he tried in the In re Baker case, and those funds were prohibited to be given out just because they were not legally titled in the debtor's name. This is an equitable interest case, and property of the estate includes equitable interests under the Bankruptcy Code. And I thank you very much, Your Honors. Thank you both for your argument in this matter. This case will stand submitted.
judges: THOMAS, CALLAHAN, SANCHEZ